IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVENFLOW PLUMBING COMPANY, INC., | No. C-3:04-cv-00795 EDL |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING COURT TRIAL** |
| v. | |
| PACIFIC BELL DIRECTORY, | |
| Defendant. | |

Plaintiff Evenflow Plumbing Company filed this copyright infringement action against Defendant Pacific Bell Directory. Pacific Bell Directory counterclaimed against Evenflow for breach of contract, account stated and quantum meruit. Both parties consented to court trial by a magistrate judge pursuant to 28 U.S.C. § 636(c).

On February 15, 2005, the Court issued its order on the parties' motions for summary judgment, holding that Pacific Bell Directory infringed on Evenflow's copyrighted photographic image of a backhoe in a vertical Yellow Pages advertisement for All-American Plumbing and that Pacific Bell Directory is entitled to recover on its breach of contract claims arising out of some of the advertising contracts between the parties. At that time, only the amount of damages recoverable by either party on their respective claims and the enforceability of the late fees and collection activity fees contained in the advertising contracts claimed by Pacific Bell Directory remained for trial.

The case was tried by the Court on April 18, 2005. At the beginning of the trial, Pacific Bell Directory waived its right to collect the late fees and collection activity fees, so the only issues remaining were the amount of damages for copyright infringement and the amount of damages for

the breach of contract claims. Bruce McIntosh represented Evenflow. Fenn Horton represented Pacific Bell Directory.

On April 26, 2005, the Court granted Pacific Bell Directory's oral motion to strike the trial testimony of Evenflow's witness, Shawny Hoops, regarding the actual damages Evenflow sustained as a result of Pacific Bell Directory's copyright infringement. The Court also granted Pacific Bell Directory's motion to exclude exhibits five and six, on which Ms. Hoops relied for that testimony.

On May 24, 2005, the Court held a hearing on the parties' Proposed Findings of Fact and Conclusions of Law and gave the parties leave to file additional briefing on the applicability of the statute of limitations defense to Pacific Bell Directory's counterclaims. On May 27, 2005, Pacific Bell Directory timely filed its brief and on June 1, 2005, Evenflow timely responded.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**Copyright damages**

As noted above, the Court granted Evenflow's motion for summary judgment in favor of its copyright infringement claim and held that Pacific Bell Directory infringed Evenflow's copyrighted image of a backhoe tractor by copying that image in the vertical Yellow Pages advertisement for All-American Plumbing. Upon a finding of copyright infringement, a copyright holder is entitled to recovery of actual damages, the infringer's wrongful profits or statutory damages. See 17 U.S.C. § 504(b), (c).

Throughout this case, Evenflow has focused on recovering its actual damages in the form of profits lost because one of its customers, Sousa & Viviani, was diverted to a competitor by Pacific Bell Directory's misappropriation of Evenflow's copyrighted image from Evenflow's own advertisements for use in its competitor's advertisement instead. The Court rule *in limine* that this type of actual damages is allowable, rejecting Pacific Bell Directory's argument that recovery of actual damages is limited to amounts attributable to the loss of market value or the value of the use of the work to the infringer. See, e.g., Polar Bear Prods. V. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) ("Actual damages are *usually* determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.") (emphasis added); see also 4 Melville Nimmer, et al., Nimmer

2

on Copyright, § 14.02[A][1] at 14-14 (noting that in determining actual damages when it is difficult to do so under a loss of market value theory, "the plaintiff's [actual] damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement."). Of course, the copyright holder bears the burden of showing that the infringement was the cause of the loss of profits. See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 567 (1985). Therefore, Evenflow's lost profits are recoverable if proven and if causation is established.

To establish causation, Evenflow presented testimony from John Monacelli, a principal with Sousa & Viviani, a general plumbing contractor located in San Leandro, California. Mr. Monacelli testified that his brother recommended that Mr. Monacelli call Gary Dimodana's company when Mr. Monacelli needed to subcontract sewer work and that the company could be located by looking for the advertisement with a backhoe tractor. Mr. Monacelli wanted to use a subcontractor that owned its backhoe tractor. Mr. Monacelli intended to hire Mr. Dimodana's company for the sewer work, so he and his brother looked in the Pacific Bell Directory for an advertisement containing a backhoe tractor. Upon seeing such an advertisement, Mr. Monacelli called the company from that ad, All-American Plumbing. During that telephone call or any subsequent calls, Mr. Monacelli neither asked to speak with Mr. Dimodana nor inquired as to whether All-American was Mr. Dimodana's company. Mr. Dimodana, in fact, had no involvement with All-American. Mr. Monacelli did business with All-American for two to three years until All-American changed its name to Bay City Plumbing and the quality of the work declined. Unable to contact All-American and believing that plumbing contractors are notorious for going out of business and reemerging under a different name, Mr. Monacelli looked in the Pacific Bell Directory again to find the advertisement with the backhoe tractor. This time he found Mr. Dimodana's company, Evenflow. Thinking that Evenflow was the reincarnation of All-American, Mr. Monacelli called Evenflow to complain about the quality of the work. Shortly thereafter, Mr. Monacelli realized that All-American was not Mr. Dimodana's company, even though he thought he was dealing with Mr. Dimodana's company for many years. Mr. Monacelli's testimony is sufficient to show that Pacific Bell Directory's infringement caused actual damage to Evenflow in the form of lost profits.

As the Court explained to Evenflow before trial, Evenflow's lost profits do not equal the

3

gross amount of the Sousa & Viviani contracts with All-American because those contracts only reflect All-American's price for the work, not the profits that Evenflow would have made if it had been awarded those contracts.

To prove its net lost profits at trial, Evenflow offered Shawny Hoops, an Evenflow employee. As described in the Court's Order Granting Defendant's Motion to Strike Trial Testimony dated April 26, 2005, Ms. Hoops was unable to testify about lost profit from her independent personal knowledge, but instead referred to a compilation of calculations she assembled about one month before trial, but gave to Pacific Bell Directory for the first time only on the eve of trial. Because Evenflow did not timely disclose that information to Pacific Bell Directory and the failure was not harmless, the Court excluded Ms. Hoops' testimony about lost profit and excluded exhibits five and six showing her calculation. See Fed. R. Civ. Proc. 37(c)(1); April 26, 2005 Order at 2:26-28. Evenflow presented no other evidence of damages from which the Court could make its own calculations of the profit Evenflow would have received but for the infringement.

In its post-trial Proposed Findings of Fact and Conclusions of Law, Evenflow argues for the first time that it is entitled to statutory damages. See 17 U.S.C. § 504 (permitting a court to award statutory damages for copyright infringement of not less than $750 nor more than $30,000, or, for willful infringement, not more than $150,000); see also Russell v. Price, 612 F.2d 1123, 1129 (9th Cir. 1980) ("It is true that when injury is proven but neither the infringer's profits nor the copyright holder's actual damages can be proved, statutory damages are mandatory."). Russell is inapposite; the rule mandating "in lieu" statutory damages applies where damages are unascertainable, not where, as here, a copyright holder fails to adequately prove its damages that are otherwise ascertainable. More importantly, Evenflow is not entitled to statutory damages because even though it began using the photograph containing the backhoe in its advertisements in 1998, it did not register its copyright in the photograph until February 15, 2002, and Pacific Bell Directory's infringement began at the latest in August 2001. See 17 U.S.C. § 412 (providing that statutory damages are unavailable if "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration

4

is made within three months after the first publication of the work."). Evenflow has presented no authority, and the Court can find none, that the "in lieu" statutory damages rule from Russell trumps section 412. Russell did not address the applicability of section 412 because the work at issue there was copyrighted well in advance of the infringement.

Further, Evenflow has not established that Pacific Bell Directory enjoyed any profits from its infringement that Evenflow could recover as damages under section 504. Accordingly, because Evenflow has failed to meet its burden of proving any damages under section 504, Evenflow shall take nothing on its claim for copyright infringement.

**Breach of contract**

Evenflow entered into various advertising agreements with Pacific Bell Directory from 1997 through 2003 on accounts numbered 279949, 279950 and 770469 under which Evenflow's advertisements were to be inserted into several of Pacific Bell Directory's Yellow Pages publications. The Court previously granted Pacific Bell Directory's motion for summary judgment on its breach of contract counterclaims, holding that Pacific Bell Directory's breach of contract claims for advertising contracts prior to July 18, 1998 were time-barred, but that Pacific Bell Directory was entitled to principal and interest on advertising agreements that were not time-barred.

Pacific Bell Directory's witness, Gina Bello, testified at trial that it was Pacific Bell Directory's custom and practice to apply a form of FIFO ("first in, first out") to its accounts receivables. Under a FIFO system, Pacific Bell Directory credited Evenflow's payments as they were received to pay off installments that had first become due and were unpaid when the payments were received. Ms. Bello also testified that, based on her experience working for other companies in this field, the standard practice within the industry was consistent with Pacific Bell Directory's system. Evenflow presented no evidence to the contrary. Evenflow did not, for example, present any evidence that it had requested that specific payments that it made be credited to more recent amounts due, and that Pacific Bell Directory had agreed to do so. Furthermore, Pacific Bell Directory points out correctly that crediting payments to the most overdue account receivable protects customers from higher interest payments for late payments.

The Court previously ruled that Pacific Bell Directory's "breach of contract claims for

unpaid installments prior to July 18, 1998, four years before the state suit was filed, are time-barred." See Feb. 15, 2005 Order at 11:27-28. The evidence presented at trial, however, revealed that there were no unpaid installments existing prior to July 18, 1998. The financial transaction statements show that the unpaid balance that existed on account number 279949 as of June 24, 1998 was paid off no later than March 1999, prior to the filing of Pacific Bell Directory's lawsuit. See Def.'s Exh. A. The unpaid balance on account number 279950 as of June 24, 1998 was paid off no later than January 2000, which is also prior to the filing of Pacific Bell Directory's lawsuit. See Def.'s Exh. C. Account number 770469 was opened in March 2002, so no part of it is time-barred. See Def.'s Exh. B. Again, Evenflow did not produce any evidence to the contrary. Evenflow did not meet its burden of establishing that the statute of limitations defense barred any amounts sought by Pacific Bell Directory.

Ms. Bello testified that the total amount due, less non-adjusted late payment charges for advertising, on account number 279949 is $226,950.44. See Def.'s Exh. Y at 3. She also testified that the total amount due, less non-adjusted late payment charges for advertising, on account number 279950 is $77,370.85 . See Def.'s Exh. Y at 4. The total amount due, less non-adjusted late payment charges for advertising, on account number 770469 is $76,540.36. See Def.'s Exh. Y at 5. Therefore, the final amount due on all accounts is $380,861.65. Evenflow presented no persuasive evidence to contradict Ms. Bello's calculations. While it argued for a lower amount, the Court credits Ms. Bello's calculations.

Pacific Bell Directory has proven its damages for breach of contract in the amount of $380,861.65. Pre-judgment interest in the amount of ten percent is mandatory under California Civil Code section 3287(a) and 3289(b). Pacific Bell Directory conceded that because interest in this case is recoverable as damages rather than based on the contracts, Civil Code section 3290 applies to waive interest from the time the accounts had zero balance. See Cal. Civ. Code § 3290 ( "Accepting payment of the whole principal, as such, waives all claim to interest."); Kawasho Int'l, U.S.A., Inc. v. Lakewood Pipe Serv., Inc., 152 Cal.App.3d 785, 794-95 (1983) ("Section 3290 applies only to situations where interest is claimed as damages for nonpayment or default in payment of a debt. Section 3290 does not apply to situations where the interest claimed is a part of the *debt*, that is,

6

where the claim for interest is based upon a contract, express or implied, to pay interest.") (emphasis in original).  Account number 279950 had a zero balance as of May 26, 2000, so no pre-judgment interest is recoverable on that account prior to that date.  See Def.'s Exh. C.  Similarly, account number 770469 had a zero balance as of June 8, 2002, so no pre-judgment interest is recoverable on that account prior to that date.  See Def.'s Exh. B.  The trial exhibits showing interest on the three accounts also included late payment charges, which Pacific Bell Directory waived at the beginning of trial.  See Def.'s Exh. U, V, W.  In its post-trial submission, Pacific Bell Directory submitted updated pre-judgment interest calculations showing pre-judgment interest due on account number 279949 in the amount of $19,463.40 on the balance due as of July 18, 1998, on account number 279950 in the amount of $2,197.62 on the balance due as of May 26, 2000 and on account number 770469 in the amount of $1,614.68 on the balance due as of June 8, 2002.  See Def.'s Proposed Findings of Fact and Conclusions of Law at 8:1-9.  Accordingly, Pacific Bell Directory is entitled to prejudgment interest in the amount of $23,275.70.

**CONCLUSION**

Evenflow is not entitled to damages for its copyright infringement claim.  Pacific Bell Directory is entitled to damages in the amount of $404,137.35 on its breach of contract counterclaim.

**IT IS SO ORDERED.**

Dated: June 7, 2005

ELIZABETH D. LAPORTE
United States Magistrate Judge